

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| DCHG INVESTMENTS, LLC, | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 6:15-2013-MGL |
| | § | |
| IAC GREENVILLE, LLC and | § | |
| INTERNATIONAL AUTOMOTIVE | § | |
| COMPONENTS GROUP NORTH AMERICA, | § | |
| INC. d/b/a IAC Group North America, INC., | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING IN PART AND DISMISSING WITHOUT PREJUDICE IN PART
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.     INTRODUCTION**

This case centers around a commercial lease dispute. Much of the controversy between the parties concerns the condition and repair of the roof on the subject Facility (the Facility), which is the subject of the Lease (the Lease). Plaintiff DCHG Investments brings this action against Defendant IAC Greenville, LLC (Defendant IAC-G) and International Automotive Components Group North America, Inc, doing business as IAC Group North America, Inc. (IAC-NA), complaining of breach of contract and seeking to pierce Defendant IAC-G's corporate veil.

Defendants allege counterclaims against Plaintiff, including breach of contract, breach of contract accompanied by a fraudulent act, and negligence. They attempt to pierce Plaintiff's corporate veil. The Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332.

Pending before the Court are Defendants' and Plaintiff's motions for partial summary judgment. Having considered the motions, the responses, the replies, the record, and the applicable law, the Court will deny in part and dismiss without prejudice in part Defendants' motion for partial summary judgment and deny Plaintiff's motion for partial summary judgment.

## II.     FACTUAL AND PROCEDURAL HISTORY

JPS Automotive, Inc. (JPS) entered into the Lease with Plaintiff commencing December 23, 2002, for the subject Facility. Thereafter, JPS and its parent, C&A, filed for bankruptcy (the bankruptcy). On October 11, 2007, IAC 199 Blackhawk Road, LLC (IAC-B) received JPS's interest in the Lease as a result of the bankruptcy. IAC-B subsequently merged with IAC-G.

IAC-G is a member-assigned LLC. IAC-NA is the sole member and manager of IAC-G.

The pertinent portions of the Lease, for purposes of this lawsuit, provide:

> 4. <u>USE OF PREMISES AS BUSINESS.</u>  [The Facility] shall be used and occupied by the Tenant for the purpose of warehousing and manufacturing. The Tenant shall, at its expense, comply with all sanitary laws, ordinances, protective covenants, and rules and orders of appropriate governmental authorities protecting the cleanliness, occupancy, and preservation of [the Facility] during the terms of the Lease. [The Facility] shall . . . not be used for any illegal purposes or in any manner to create a nuisance or trespass.
>
> 5. <u>PRESENT CONDITION OF [THE FACILITY].</u>  Tenant stipulates that it has examined [the Facility] and that it is, at the time of the Lease, in good order and repair, and in a safe, clean, and tenantable condition.
>
> . . . .
>
> 9. <u>MAINTENANCE OF PREMISES.</u>
>
> A.     <u>By Landlord</u>:     Landlord shall have no maintenance responsibilities whatsoever with regard to [the Facility], except as

> may be necessitated by the negligence or willful misconduct of Landlord, its agent(s), employee(s), contractor(s) or other tenant(s).
>
> B.   <u>By Tenant</u>: Tenant shall, at its sole expense, keep and maintain [the Facility] and appurtenances in good and sanitary condition and repair during the term of this Lease, including, without limitation, the exterior of [the Facility] (including the roof, walls, foundation, gutters, downspouts, doors and windows, and structural portions thereof), as well as the heating, gas, electrical, plumbing, and other similar units and systems within and serving [the Facility].
>
>    Tenant agrees to return [the Facility] in as good a condition and repair as when possession was first taken, normal wear and tear, and damage caused by casualty excepted.
>
> 10.  <u>ALTERATIONS AND ADDITIONAL IMPROVEMENTS.</u> Tenant shall make no material alterations to the building or make other material improvements to [the Facility], without the prior written consent of the Landlord, which such consent shall not be unreasonably withheld.  All alterations, changes, and improvements built, constructed, or placed on [the Facility] by the Tenant, with the exception of personal property removable without damage to [the Facility], shall, unless otherwise provided by written agreement between the Landlord and Tenant, be the property of the Landlord and remain on [the Facility] at the expiration or sooner termination of this Lease.

ECF No. 59-7 at 5-7.

After Plaintiff filed its second amended complaint, both Defendants and Plaintiff filed motions for partial summary judgment.  The Court, having been fully briefed, is now prepared to adjudicate these two motions.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the

3

non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc*., 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc*., 947 F.2d 115, 119 (4th Cir. 1996). "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props*., 810 F.2d 1282, 1286 (4th Cir. 1987). The court must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## IV.     DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.     *Contentions of the Parties*

Defendants contend Defendant IAC-NA is not a party to the lease and thus cannot be held liable for a breach of contract. According to Defendants, Plaintiff is unable to pierce IAC-G's corporate veil to reach IAC-NA. More specifically, Defendants maintain there is no viable cause of action to pierce the corporate veil of an LLC under South Carolina law. But, even if there were, Defendants aver Plaintiff's attempt to pierce Defendant IAC-G's corporate veil to reach Defendant IAC-NA is improper here.

Defendants also state Defendant IAC-G is not liable for a breach of contract because the lease fails to require Defendant IAC-G to make capital improvements or replacements. Related to this argument, Defendants urge the Court to hold Defendant IAC-G cannot be liable for any failure to return the Facility in any condition other than the condition it was in on October 11, 2007, the date IAC-B acquired its interest in the Lease from JPS, or for any damage to the facility occurring prior to that date. Defendants avow Plaintiff is unable to prove the condition of the facility at the time Defendant IAC-G vacated it was not same as its condition on October 11, 2007, normal wear and tear excepted.

Plaintiff takes issue with each of Defendants' contentions.

### B.     *Discussion and Analysis*

First, Defendants contend Defendant IAC-NA cannot be held liable for a breach of contract because it was not a party to the contract. As Plaintiff notes in its response to Defendants' motion for summary judgment, however, Plaintiff "has alleged that not only were the rent payments handled by [IAC-NA], it was the party that negotiated the final oral lease extension with Plaintiff in 2014. [IAC-G] had no involvement in these negotiations, which were handled by IAC-NA employees." ECF No. 62 at 4 n.3 (citing ECF No. 37 ¶ 19). Further, according to Plaintiff, [IAC-NA] "further took over the shutdown process that the extension was designed to facilitate and blurred the distinctions between itself and [IAC-G] by thoroughly dominating its affairs." *Id*. Inasmuch as there is a genuine issue of material fact on this issue, the granting of summary judgment on this claim would be improper.

Second, Defendants argue Plaintiff is unable to pierce IAC-G's corporate veil in its attempt to reach IAC-NA. More specifically, Defendants maintain South Carolina law fails to provide a viable cause of action to pierce the corporate veil of an LLC. But, assuming South Carolina allowed for it, Defendants aver Plaintiff's attempt to pierce Defendant IAC-G's corporate veil to reach Defendant IAC-NA is inappropriate in these circumstances.

Plaintiff states Delaware, not South Carolina, law is the law that applies in this action. And under Delaware precedent, Plaintiff insists it is able to pierce Defendant IAC-G's corporate veil and reach Defendant IAC-NA. To that, Defendants reply "the Court need not decide whether South Carolina or Delaware law would apply. Even if Delaware law controls, [Plaintiff's] claim to pierce the corporate veil must fail and summary judgment is appropriate." ECF No. 66 at 4.

Because IAC—G is a Delaware limited liability company, the Court will look to Delaware law for its determination on this issue.

Delaware law allows for the piercing of the corporate veil of an LLC such as Defendant IAC‑G.  *See Geyer v. Ingersoll Publ'n*, 621 A.2d 784, 973 (Del. Ch. 1992) ("[A] court can pierce the corporate veil of an [LLC] where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner.").  Such a piercing can be accomplished "only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved." *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968).

The Delaware courts have cited to a Fourth Circuit opinion *Dewitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681 (4th Cir. 1976), for a list of some of the factors a court is to consider when deciding whether a corporate veil ought to be pierced. *E.g.*, *United States v. Golden Acres, Inc*., 702 F. Supp 1097, 1104 (D. Del. 1988).  The *Dewitt* court supplies a non-exclusive list: inadequate capitalization, "failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders."  *Dewitt*, 540 F.2d at 686-87.

The Court sees no reason to provide a "he-said-she-said" enumeration of the parties' arguments on the application of their factual allegations to the relevant law.  Suffice it to say there is a genuine issue of material facts in the evidence presented by the parties on this issue. Therefore, the Court will also decline to grant summary judgment on this issue.

Third, Defendants state Defendant IAC-G is not liable for a breach of contract because the Lease fails to require Defendant IAC-G to make capital improvements or replacements. But, as Plaintiff notes in its response to Defendants' motion for summary judgment, the Lease "in fact does envision a tenant making alterations, but requires the tenant to obtain the landlord's consent prior to making to significant alterations." ECF No. 62 at 12 n.8. Additionally, "compliance with governmental building codes, which would clearly be the tenant's obligation . . . would conflict with a rule where the tenant never has to make anything that can be construed as a capital or structural improvement." *Id*. Further cutting against Defendants' argument is the language from the Lease stating "Tenant shall, at its sole expense, keep and maintain [the Facility] and appurtenances in good and sanitary condition and repair during the term of this Lease, including, without limitation, the exterior of [the Facility] (including the roof, walls, foundation, gutters, downspouts, doors and windows, and structural portions thereof)." It is for these reasons the Court must reject Defendants' position on this issue.

Fourth, Defendants posit Defendant IAC-G cannot be liable for any failure to return the facility in any condition other than the condition is was in on October 11, 2007, or for any damage to the facility that was done before that date. Defendants interpret the Bankruptcy Order regarding JPS to say they lack any obligation as to any damage to the Facility before that date. Plaintiff rejects this interpretation, states that a release such as this is an affirmative defense and, based on Defendants' failure to plead the defense of release, urges the Court to decline consideration of Defendants' argument. Plaintiff avows "[t]his failure precluded Plaintiff from conducting discovery on this topic, such as attempting to question or depose those individuals

8

involved in the bankruptcy process regarding the discussions regarding the assignment and the obligations under the Lease." ECF No. 62 at 28.

So that a determination can be made on the merits of Defendants' argument, the Court will dismiss this portion of Defendants' motion and allow the parties to conduct discovery on this issue if the parties wish to do so.

Fifth, Defendants avow Plaintiff is unable to establish the condition of the Facility at the time Defendant IAC-G vacated it was different than its condition when Defendant IAC-G assumed the lease, normal wear and tear excepted. Given the Court's decision above, the Court will also dismiss this portion of Defendants' motion so the parties can conduct discovery on the assignment of the Lease if they decide to do so.

## V.     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.    *Contentions of the Parties*

Plaintiff argues Defendants' counterclaim for breach of contract fails because it is based upon duties appearing nowhere in, but directly contradicted by, the Lease. Plaintiff also states Defendants are unable to bring a claim for breach accompanied by fraud because there exists no evidence of false statements and, even if the statements were made, Defendants would have no right to rely upon them. Further, according to Plaintiff, Defendants' negligence claim fails because Plaintiff owed no duty to Defendants.

Defendants maintain these arguments lack merit.

### B.     *Discussion and Analysis*

First, Plaintiff asserts Defendants' counterclaim for breach of contract should be dismissed because the claim is based upon duties that do not appear in the Lease. There are several problems with this argument. For the sake of brevity, the Court will address just one of them.

According to Plaintiff, "the Lease is clear that the tenant has sole responsibility for the maintenance and repair of the facility, and that this obligation includes:

> the roof, walls, foundation, gutters, downspouts, doors and windows, and structural portions thereof), as well as the heating, gas, electrical, plumbing, and other similar units and systems within and serving said [Facility].

ECF No. 60-1 at 13 (quoting ECF No. 59-7 at 6). But, the Lease also provides the "Landlord shall have . . . maintenance responsibilities . . . necessitated by the negligence or willful misconduct of Landlord its agent(s) employee(s) contractor(s) or other tenant(s)." ECF No. 59-7 at 6. Hence, the Court will deny Plaintiff's motion for summary judgment on this counterclaim.

Second, Plaintiff avows Defendants are unable to bring a claim for breach accompanied by fraud because there exists no evidence of false statements and, even if the statements were made, Defendants would have no right to rely upon them.

"[A] misrepresentation made in reckless disregard for the truth will support an action for breach of contract accompanied by a fraudulent act." *Kelly v. Nationwide Mut. Ins. Co.*, 298 S.E.2d 454, 455 (S.C. 1982). In this instance, the plaintiff must prove she relied on the misrepresentation. *Id.* "[T]o have a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." *Conner v. City of Forest Acres*, 560 S.E.2d 606, 612 (S.C. 2002).

"Fraud, in this sense, assumes so many hues and forms, that courts are compelled to content themselves with comparatively few general rules for its discovery and defeat, and allow the facts and circumstances peculiar to each case to bear heavily upon the conscience and judgment of the court or jury in determining its presence or absence." *Id*. (citation omitted) (internal quotation marks omitted).

The Court declines to enumerate all the reasons the granting of summary judgment on this issue would be improper. Defendants have brought the Court's attention to a host of them. Suffice it to say there exist genuine issues of material fact as to whether there are misrepresentations and acts attributable to Plaintiff that make this claim a colorable one. Thus, the Court will deny Plaintiff's request for summary judgment on this counterclaim.

Third, according to Plaintiff, Defendants' negligence claim must be dismissed because Plaintiff did not owe any contractual duty to Defendants. As the Court has already noted, however, the Lease states, in relevant part, the "Landlord shall have . . . necessitated by the negligence or willful misconduct of Landlord its agent(s) employee(s) contractor(s) or other tenant(s)." ECF No. 59-7 at 6. This clause runs sideways into the notion the Court ought to grant summary judgment to Plaintiff on this issue. Consequently, it will deny the request.

## VI.     CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of this Court Defendants' motion for partial summary judgment is **DENIED IN PART AND DISMISSED WITHOUT PREJUDICE IN PART** and Plaintiff's motion for partial summary judgment is **DENIED**.

The parties shall submit a joint consent amended scheduling order to the Court not later than seven days after the Court's filing of this Order.

**IT IS SO ORDERED.**

Signed this 23rd day of February, 2017, in Columbia, South Carolina.

s/Mary Geiger Lewis<br>
MARY GEIGER LEWIS<br>
UNITED STATES DISTRICT JUDGE