IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| DCHG Investments LLC, | Case No. 6:15-cv-02013-DCC |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| IAC Greenville LLC and International Automotive Components Group North America Inc., | |
| Defendants, | |
| IAC Greenville LLC, | |
| Third-Party Plaintiff, | |
| v. | |
| John W. Dickens and THD Investments LLC, | |
| Third-Party Defendants, | |
| IAC Greenville LLC, | |
| Counter Claimant, | |
| v. | |
| DCHC Investments LLC, | |
| Counter Defendant. | |

This matter is before the Court on Defendants' Motion for Summary Judgment. ECF No. 77. Plaintiff filed a Response in Opposition to the Motion, and Defendants filed a Reply. ECF Nos. 91, 92. Accordingly, the Motion is ready for review.

1

The Court will also address Defendants' Motion in Limine to exclude the introduction of certain photographs and testimony about the photographs; Defendants' Motion to Limine to exclude the testimony and report of Earle Furman; Defendants' Motion in Limine to exclude the testimony and report of Richard P. Baxter; and Plaintiff's Motion in Limine to exclude the prior bad acts of a consultant, evidence of communications between Plaintiff and its prior lender, and evidence of the Sale Order. ECF Nos. 78, 79, 80, 81. The parties have responded to the motions, and the issues are fully briefed.

## **BACKGROUND**

Plaintiff brings this action against Defendant IAC Greenville, LLC and International Automotive Components Group North America, Inc, doing business as IAC Group North America, Inc., complaining of breach of contract. Defendants allege counterclaims against Plaintiff, including breach of contract, breach of contract accompanied by a fraudulent act, and negligence. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

This case involves a commercial lease dispute. Much of the controversy between the parties concerns the condition and repair of the roof on the subject facility ("the Facility"). JPS Automotive, Inc. ("JPS") entered into a lease with Plaintiff commencing December 23, 2002, for the Facility. On May 17, 2005, JPS and its parent company, Collins & Aikman, filed for bankruptcy. Among its various defaults under the lease, JPS was in breach of the lease because it failed to repair or maintain the Facility as required. ECF No. 77-5 at 11.

On June 11, 2007, the Bankruptcy Court for the Eastern District of Michigan issued a Sale Order authorizing the sale and transfer of the lease, among other assets. ECF

No. 77-4.  On October 11, 2007, as authorized by the Sale Order, IAC 199 Blackhawk Road, LLC[1] received JPS's interest in the lease pursuant to the Assignment and Assumption of Lease ("Assignment").  ECF No. 77-9.  The Assignment was entered into pursuant to, and is subject to, the Sale Order.  ECF No. 77-4 at 7.

## APPLICABLE LAW

*Summary Judgment Standard*

Rule 56 states, as to a party who has moved for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard,

---

[1] IAC 199 Blackhawk Road, LLC subsequently merged with IAC Greenville, LLC.

the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Upon review of the parties' submissions, it does not appear that the material facts in this case are in dispute. Rather, the principal dispute concerns the effect of the Bankruptcy Court's Sale Order on Defendants' duties under the lease and the extent to

4

which the Sale Order operates to eliminate Defendants' liability for any prior or future breach of the lease terms.

Defendants contend that they were not required to return the Facility to the same condition it was in on December 23, 2002, the date that Plaintiff and JPS entered into the lease. ECF No. 77-1 at 7. Defendants assert that their interest in the Facility is subject to and pursuant to the Sale Order and Assignment. *Id.* Defendants argue that the Sale Order expressly prohibits JPS's liabilities from being transferred to Defendants. *Id.* at 10. Defendants assert that the Facility is not in the same condition that it was in 2002 because JSP breached its duty to maintain the premises. *Id.* Accordingly, Defendants contend that requiring them to return the Facility in its 2002 condition would be to hold Defendants liable for JPS's breach. *Id.* The Court disagrees.

Defendants' argument is premised on the theory that JPS breached its duty to maintain the premises under the lease. Under the Sale Order, Defendants are not liable for JPS's failure to maintain the Facility. However, as Plaintiff explains in its Response in Opposition to the Motion for Summary Judgment, it does not appear that JPS was necessarily in breach of the applicable lease provision. Section 9.B of the lease provides the tenant's obligations to maintain the Facility and states that,

> Tenant shall, at its sole expense, keep and maintain [the Facility] and appurtenances in good and sanitary condition and repair during the term of this Lease, including, without limitation, the exterior of [the Facility] (including the roof, walls, foundation, gutters, downspouts, doors and windows, and structural portions thereof), as well as the heating, gas, electrical, plumbing, and other similar units and systems within and serving [the Facility].
>
> **Tenant agrees to return [the Facility] in as good a condition and repair as when possession was first taken,**

5

> **normal wear and tear, and damage caused by casualty excepted.**

ECF No. 77-3 at 6–7 (emphasis added).

JPS may have breached its duty to maintain the Facility; however, the duty to return the Facility in as good a condition and repair as when possession was first taken could not arise until the Facility was surrendered to Plaintiff upon expiration of the lease. *See Ross Dress for Less, Inc. v. Makarios-Oregon,* LLC, 191 F. Supp. 3d 1189, 1219 (D. Or. 2016) ("[A] lessor can enforce an obligation to surrender the leased premises in good order, condition, and repair only when the obligation becomes due, which is at the end of the lease term.").[2]

Significantly, here Defendants assumed the lease in the Assignment and expressly covenanted to perform the obligations that arose after October 11, 2007. ECF No. 77-9 at 3 ("Assignee . . . does hereby assume and agrees to comply with and perform all of the covenants, agreements, conditions, terms and obligation . . . to be complied with and performed under the Lease accruing from and after the Effective Date."); *see also* Johnson v. Bank of Am., N.A., No. CA 3:09-1600-JFA, 2010 WL 1542560, at *3 (D.S.C. Apr. 16, 2010) (holding that an assignee or delegate stands in the shoes of the assignor "with respect to the rights and duties created by the Agreement").

As quoted by Defendants in their Motion for Summary Judgment, the Sale Order did not extinguish any future duties owed to Plaintiff in the lease. *See*, *e.g.*, ECF No. 91-

---

[2] The Court notes that Defendants attempt to distinguish the facts in *Ross* from the facts in this case. Defendants argue that in *Ross* there was no preclusive order cutting off liability and that the assignee agreed to be the successor. As explained in this Order, the Court does not read the Sale Order to preclude liability for future obligations and the fact that the assignee in *Ross* agreed to be the successor does not alter the Court's conclusion about the arguments presented in this Motion.

6

3 at 13 ("Unless otherwise agreed to all defaults or other obligations of the Debtors under any Assumed Contract arising or accruing **prior** to the date of this Order . . shall be deemed cured by the Debtors upon payment of the Debtors . . . ."); *id.* ("[E]ach nondebtor party to an Assumed Contract hereby is forever barred, estopped, or permanently enjoined from asserting against the Debtor or the Purchaser . . . any default **existing as of the date of this Order** . . . ." (emphasis added)).

Accordingly, the Sale Order does not operate to extinguish obligations that were not yet due under the lease, including the duty to return the Facility in as good a condition, less normal wear and tear, as it was in when JPS took possession of the Facility. Thus, summary judgment is denied.

Defendants assert several other arguments in support of their contention that they are not responsible for the return of the Facility in its 2002 condition. The Court will address each of these in turn.

Defendants argue that the term "possession" indicates that Defendants are only responsible for any damage that occurred since they took possession of the Facility. Defendants contend that other lease provisions use the language "at the time of the lease"; therefore, it is significant that this provision uses the word "possession." The Court does not find this argument persuasive. It would appear that the lease only anticipated JPS taking possession of the Facility. Nothing in the lease would lead this Court to assume that Plaintiff and JPS anticipated another tenant taking over the lease through a bankruptcy sale and, therefore, intended to limit the liability of the new tenant by using the word "possession." Accordingly, summary judgment is not appropriate on the basis of this claim.

Defendants also argue that allowing Plaintiff to assert claims against Defendants subsequent to the sale of the Facility runs "counter to a core aim of the Bankruptcy Code, which is to maximize the value of the assets and thereby maximize potential recovery to the creditors." ECF No. 77-1 at 12 (quoting *Douglas v. Stamco*, 363 F.App'x. 100, 102 (2nd Cir. 2010)). As discussed above, the Bankruptcy Court's Sale Order did not eliminate future obligations in the lease. Accordingly, Defendants' Motion for Summary Judgment is denied with respect to this claim.[3]

Defendants further argue that § 9.B of the lease should be read as one provision; therefore, because JPS breached its duty to maintain, it also breached its duty to return the Facility in the required condition. "[T]he paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." *Taylor v. Lindsey*, 498 S.E.2d 862, 863–64 (S.C. 1998) (citations and quotation marks omitted). "It is not the function of the court to rewrite contracts for parties." *Lewis v. Premium Inv. Corp.*, 568 S.E.2d 361, 363 (S.C. 2002). Here, there is no clear indication that the parties to the lease intended that these provisions be read as one. The first provision deals with a recurring obligation to maintain the Facility. The second provision discusses a future obligation to return the Facility in the future. The provisions are set out in two separate paragraphs. Accordingly, the Court declines to grant summary judgment on the basis of this argument.[4]

---

[3] Defendants also assert that they are not successors to JPS's liabilities. As the Court has explained above, it does not consider them successors to a previous obligation of JPS. Instead, Defendants' assumption of lease made them liable for the provisions that were not yet due at the time of the Sale Order and Assignment.

[4] Finally, Defendants assert that Plaintiff cannot prove the condition of the Facility on October 11, 2007, the date Defendants assumed the lease. Thus, there is no way to

8

## **MOTIONS IN LIMINE**

*Photographs*

Defendants move to exclude all photographs of the Facility taken by Plaintiff or a representative of Plaintiff after Defendants vacated the Facility and that were taken during or after its substantial alterations to the Facility. ECF No. 78. Defendants contend that Plaintiff engaged in substantial demolition after Defendants vacated the Facility; accordingly, photographs taken during or after this demolition would be misleading and unfairly prejudicial. *Id.* Defendants further move to exclude all testimony by Plaintiff or Plaintiff's representative that any photograph was taken on any date other than the date captured in metadata or the date of the document to which the photograph was first attached. *Id.*

Plaintiff argues that Defendants' motion is overbroad and mischaracterizes the relevant law governing the admission of evidence, including photographic evidence. ECF No. 88. Plaintiff contends that any photographs that are not kept electronically will not have any metadata. *Id.* With respect to Defendants' argument that some of the photographs show the Facility after substantial alteration by Plaintiff, Plaintiff asserts that this is a question for the jury. *Id.*

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining

---

differentiate what damage was caused by Defendants since 2007 and what damage was caused by JPS from 2002 through 2007. Therefore, Defendants cannot be liable for any damage to the Facility that occurred from 2007 until the time they surrendered the Facility. Even if the Court agreed that Defendants were not liable for any damage to the Facility between 2002 and 2007, whether Plaintiff can establish the condition of the Facility in 2007 presents a genuine issue of material fact that is not appropriate for summary judgment.

the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Subject to proper foundation and authentication, the Court concludes that any photographs purporting to reflect the condition of the Facility as it existed at the time Defendants vacated, regardless of when they were taken, may be relevant. Further, if their relevance is not substantially outweighed by some other factor, they may be admitted into evidence. Any photographs that reflect conditions after any substantial alterations by Plaintiff will be considered on a case by case basis when proffered; however, these photographs may be excluded based on relevance, lack of sufficient foundation, or pursuant to Federal Rule of Evidence 403.

***Earle Furman***

Defendants contend that Plaintiff intends to call Earle Furman as an expert to testify regarding the tenant's obligations under the lease, the tenant's maintenance of the Facility and the actual condition of the building, and any lost rental income or diminished value to the property. ECF No. 79. Defendants argue that Furman's testimony and report should be excluded because his opinion regards an issue of law, attempts to interpret an unambiguous contract, expresses legal conclusions, falls outside the scope of expertise, and is unreliable. *Id.* Defendants assert that Furman lacks experience regarding building maintenance because he engages in the leasing and sale of commercial real estate. *Id.*

Plaintiff responds that Furman's report covers areas well within his expertise as a commercial real estate broker and that Defendants misstate his opinions. ECF No. 90.

10

Further, Plaintiff argues that Furman's calculation regarding lost rental income is reliable. *Id.*

The admission of expert testimony in federal courts is governed by Federal Rule of Evidence 702, which permits the court to allow testimony from a witness qualified as an expert if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." "In *Daubert*, the [Supreme] Court announced five factors that may be used in assessing the relevancy and reliability of expert testimony: (1) whether the particular scientific theory 'can be (and has been) tested'; (2) whether the theory 'has been subjected to peer review and publication'; (3) the 'known or potential rate of error'; (4) the 'existence and maintenance of standards controlling the technique's operation'; and (5) whether the technique has achieved 'general acceptance' in the relevant scientific or expert community." *United States v. Crisp*, 324 F.3d 261, 266–67 (4th Cir. 2003) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. at 579, 593–94 (1993)).

The inquiry envisioned by Rule 702 is a flexible one, and "[i]ts overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Daubert*, 509 U.S. at 594–95. "In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (1999) (citing *Kumho*

*Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149–52 (1999)). "The court, however, should be conscious of two guiding, and sometimes competing, principles." *Id.* "On the one hand, the court should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence." *Id.* (citing *Cavallo v. Star Enter.*, 100 F.3d 1150, 1158–59 (4th Cir. 1996)). "On the other hand, the court must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Id.* (quoting *Daubert*, 509 U.S. at 595). "[G]iven the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Id.* (citing *United States v. Dorsey*, 45 F.3d 809, 815–16 (4th Cir. 1995)).

The Court finds that Furman's expert testimony is relevant and reliable. While Furman will not be allowed to offer opinions on questions of law for the Court to decide, he is well qualified in the field of commercial leasing, including custom and usage regarding existing lease terms, quality of a facility with respect to its lease value, and the likely rent to be expected for a comparable building in good condition in the local area. Moreover, an expert may rely on information from others, even hearsay, if it is of a type normally relied upon by such experts. Fed. R. Evid. 703. Accordingly, Defendants' arguments primarily go to the weight to be given to the expert's opinion, not its admissibility. Thus, Defendants' Motion is denied.

### *Richard Baxter*

Defendants move to exclude the expert report and testimony of Richard Baxter in their entirety because they are unreliable and scientifically unsound in that they fail to consider all necessary and relevant information; demonstrate irregular, unorthodox, and

careless preparation and methodology; and offer conclusory statements. ECF No. 80. Defendants also contend that Baxter's report does not comply with Federal Rule of Civil Procedure 26(a) because it fails to provide any disclosure or information on the alleged age of the roof section. In the event that the Court declines to exclude his entire report and testimony, Defendants assert that his opinions should be excluded to the extent that they discuss the parties' obligations under the lease, any maintenance, or the age of the roofs because these opinions are improper, inadmissible, and unreliable. *Id.* Moreover, Defendants assert that any probative value is outweighed by the dangers of unfair prejudice and confusion to the jury.

Plaintiff responds that Baxter is a commercial roofer with over 45 years of experience; accordingly, he is qualified to provide an expert opinion regarding whether the roof shows signs of preventive maintenance and the cost to put the roof in good order and repair. ECF. No. 89. Plaintiff asserts that Baxter's opinions are highly reliable based on his experience and observations of the roof. *Id.* Plaintiff further argues that Baxter's opinion with respect to the age of the roof was elicited by Defendants' counsel and represents a statement of fact based on his experience and observations.

The Court finds that any evidence of a failure to perform "preventive maintenance," which is not required by the lease, is irrelevant to the duties to maintain the Facility and to return the Facility in as good a condition and repair as when possession was first taken, normal wear and tear excepted. Moreover, Baxter's opinion is unreliable because he did not review any materials to establish a baseline regarding the condition of the roof at the time of the lease, or anytime thereafter, until he performed his inspection in March 2015. While Baxter is well qualified to assess the condition and the cost to repair or replace the

13

roof at the time of his inspection, he has no factual basis to opine with respect to the condition of the roof at any earlier time. He acknowledges evidence of efforts to repair the roof over time; however, he cannot say who performed the repairs or when. Accordingly, Baxter's opinion(s) regarding lack of maintenance is excluded and Defendants' Motion is granted. Defendants' Motion is denied in all other regards as to Baxter.

*Plaintiff's Motion*

Plaintiff seeks to exclude the twenty-six-year-old criminal conviction of a consultant, John Geiser, who worked with Plaintiff. ECF No. 81-1. In 1991, Geiser pled guilty to mail fraud relating to the misappropriation of funds of his then employer. Plaintiff asserts that the introduction of Geiser's prior bad acts would be unfairly prejudicial. Defendants contend that Geiser has engaged in deceitful conduct as recently as 2014 and argue that the Federal Rules of Evidence allow some or all of Geiser's prior bad acts to come in. ECF No. 87. Moreover, Defendants argue that Geiser's prior bad acts demonstrate prolonged dishonesty.

Under Rule 609, in the civil action context, evidence of a conviction of crime that is "punishable by death or by imprisonment for more than one year" must be admitted, subject to Rule 403. Fed. R. Evid. 609(a)(1)(A). As to any crime, regardless of the applicable punishment, "the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." *Id.* at (a)(2). However, admission under Rule 609 remains subject to Rule 403, which excludes evidence when its potential for unfair

prejudice substantially outweighs its probative value. As the court in *United States v. Estrada* stated:

> [Rule 609(a)(1)] requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' This determination is left to the sound discretion of the district court.

430 F.3d 606, 621 (2d Cir. 2005) (internal citation omitted).

Further, evidence of a conviction of a crime is usually not admissible if more than ten years have passed "since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." *Ghant v. Brown*, 930 F.2d 633, 638 n.10 (8th Cir. 1991) (quoting Fed. R. Evid. 609(b)). If more than ten years have passed, then a court may admit evidence of that conviction "only if (1) its probative value . . . substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b)(1–2). If a court decides to admit evidence of a prior conviction for impeachment, "the impeaching party 'is generally limited to establishing the bare facts of the conviction: usually the name of the offense, the date of the conviction, and the sentence.'" *Somerville v. Saunders*, 2014 WL 272415, at *3 (N.D.N.Y. Jan. 24, 2014) (quoting *United States v. Brown*, 606 F. Supp. 2d 306, 319 n.8 (E.D.N.Y. 2009) (quoting 4 Weinstein's Federal Evidence § 609.20[2] (2d ed. 2008))).

Here, the Court agrees that Geiser's 1991 conviction should be excluded as remote because it is more than 10 years old. Further, Defendants have not demonstrated that its probative value would substantially outweigh its prejudicial effect. With respect to any other bad acts that Geiser is alleged to have engaged in, the Court reserves ruling on this issue pending Defendants' proffer at trial.

Plaintiff also seeks to exclude evidence regarding Plaintiff's communications with its prior lender as prejudicial to Plaintiff. Defendants assert that the communications between Plaintiff and its prior lender are relevant to this case because these communications show the extent of damage to the Facility and Plaintiff's efforts to maintain or repair the Facility; Defendants argue that the prior communications also establish elements of Defendant IAC Greenville's counterclaims to pierce Plaintiff's corporate veil and for breach of contract and negligence. The Court will defer ruling at this time so that it may consider how Defendants intend to use this evidence at trial.

Finally, Plaintiff seeks to exclude evidence regarding the Sale Order in the JPS bankruptcy because it is irrelevant to any claim being made against Defendants. Defendants contend that any discussion of the Sale Order is a legal issue, not a factual issue. Further, Defendants assert that the Sale Order is relevant and is not an untimely defense. The Court finds that evidence with respect to the Sale Order is relevant to the present action; further, its relevance is not substantially outweighed by any other factor. *See* Fed. R. Evid. 401, 403. Accordingly, Plaintiff's Motion is denied with respect to this issue.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED**. With respect to the Motions in Limine, Defendants' Motion [78] is **DENIED** as set out, Defendants' Motion [79] is **DENIED**, Defendants' Motion [80] is **GRANTED in part** and **DENIED in part** as set out, and Plaintiff's Motion [81] is **GRANTED in part**, **DENIED in part**, and **DEFERRED in part** as set out.

IT IS SO ORDERED.

s/Donald C. Coggins, Jr.
United States District Judge

May 2, 2018
Spartanburg, South Carolina